**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SHELIA FAY PARKER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-CV-272-BH** |
| | § | |
| **NANCY A. BERRYHILL, ACTING, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the consent of the parties and the order of reassignment dated April 8, 2016 (doc. 15), this case has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *Plaintiff's Brief on Review of the Social Security Administration's Denial of Benefits*, filed May 11, 2016 (doc. 17), *Defendant's Brief*, filed June 10, 2016 (doc. 19), and *Plaintiff's Reply to the Commissioner's Brief*, filed June 29, 2016 (doc. 20). Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further administrative proceedings.

## I. BACKGROUND[1]

### A. Procedural History

Shelia Fay Parker (Plaintiff) seeks judicial review of a final decision by the Acting Commissioner of Social Security (Commissioner)[2] denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act. (R. at 1, 132.) On November 17, 2011,

---

1 The background information comes from the transcript of the administrative proceedings, which is designated as "R."

2 At the time of filing of this appeal, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration, but she was succeeded by Nancy A. Berryhill beginning January 20, 2017.

Plaintiff filed her application for SSI, alleging disability beginning February 1, 2011.[3] (R. at 439.) Her claim was denied initially and upon reconsideration. (R. at 360-62, 372-80.) Plaintiff requested a hearing before an administrative law judge (ALJ), and she personally appeared and testified at a hearing on April 17, 2013. (R. at 147-81.) On May 20, 2013, the ALJ issued a decision finding that she was not disabled and denying her claim for benefits. (R. at 132-46.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council and included new medical evidence. (R. at 12-28, 35-116.) The Appeals Council determined that the new evidence did not provide a basis for changing the decision and denied her request for review on December 15, 2015, making the ALJ's decision the final decision of the Commissioner. (R. at 1-5.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

## B. <u>Factual History</u>

### 1. Age, Education, and Work Experience

Plaintiff was born on November 17, 1959, and was 53 years old at the time of the hearing. (R. at 473.) She left school in the 11th grade and never received a GED. (R. at 467-68.) She had past relevant work experience as a home health attendant and a cook helper. (R. at 175.)

### 2. Medical Evidence[4]

On July 14, 2009, Plaintiff visited the urgent care clinic of Parkland Health and Hospital System (Parkland) for pain in her right shoulder and arm. (R. at 658-60.) No weakness or numbness

---

[3] Plaintiff previously applied for supplemental security income and disability insurance benefits on August 3, 2009, but her applications were denied on January 31, 2011. (R. at 314-39, 340-58.) She also applied for disability insurance benefits and widow's insurance benefits on November 21, 2011, but she withdrew those applications at the hearing on April 17, 2013. (R. at 149-52, 432-38.) She does not appeal the denial of any of her other applications. (*See* doc. 19.)

[4] The record contains medical evidence regarding Plaintiff's hypertension and hysterectomy. (*See e.g.*, R. at 604-10, 621-49, 840-45, 853-88, 920-31, 1190-1209, 1319-41, 1415-26, 1488-98.) Because that evidence was not cited in the parties' arguments and does not appear relevant, it is not recited here.

was reported, but she did exhibit a decreased range of motion in her right shoulder. (R. at 659.) X-rays showed degenerative changes in her shoulder, and she was prescribed pain medication. (R. at 659, 680.) She returned for a follow-up appointment on July 30, 2009, and complained of pain in her chest and left shoulder, but her physical exam was negative for tenderness and showed a normal range of motion. (R. at 655-56.)

On September 21, 2009,[5] Dr. Kavitha Reddy, M.D., a state agency medical consultant (SAMC), completed a physical residual functional capacity (RFC) assessment of Plaintiff.[6] (doc. 17-2 at 1-8.) Dr. Reddy opined that Plaintiff had the following exertional limitations: could occasionally lift 20 pounds and frequently lift 10 pounds; could stand, walk, or sit with normal breaks for a total of about 6 hours in a normal 8-hour workday; and an unlimited ability to push or pull. (doc. 17-2 at 2.) She had no postural or manipulative limitations except for a limited ability to only occasionally reach with her bilateral upper extremities due to degenerative changes. (doc. 17-2 at 3-4.)

On August 13, 2010, Plaintiff met with Dr. Nasrin Safari, M.D., of Parkland's Bluitt Flowers Adult Clinic for pain in her left shoulder and arm. (R. at 900-09.) Plaintiff reported that she was unable to raise her left arm without pain, but her physical exam showed a normal range of motion in her neck and musculoskeletal system. (R. at 905.) X-rays of her left shoulder were taken a week later and revealed osteroarthritis with spur formation. (R. at 744.) Plaintiff returned for a follow-up on September 27, 2010, and complained of hand swelling. (R. at 913-14.) Her musculoskeletal

---

[5] Dr. Reddy's RFC assessment occurred during the pendency of Plaintiff's prior SSI application but was also admitted into her current application. (*See* doc. 17-2.)

[6] The record initially contained Dr. Reddy's medical assessment, but it was removed by the ALJ after the administrative hearing without explanation. (*See* R. at 152-60.) Both parties agree that this medical evidence was properly admitted into the case record, so it is recited here. (docs. 17 at 17-20, 19 at 7.)

exam was positive for myalgias and joint pain, and she exhibited a decreased range of motion and tenderness in both hands. (R. at 914.) She was diagnosed with osteoarthritis and prescribed pain medication. (R. at 914-15.)

On November 19, 2010, Plaintiff returned to Dr. Safari and complained of increased pain in her left shoulder. (R. at 918-19.) She also reported left ankle pain and use of a cane for ambulation. (R. at 919.) Dr. Safari ordered an MRI and diagnosed her with shoulder pain and ankle pain. (R. at 919.) The MRI of her left shoulder revealed no abnormalities, but the results were suggestive of moderate rotator cuff tendinopathy and moderate degeneration and osteoarthritis. (R. at 670, 739.)

On March 9, 2011, Plaintiff visited Parkland's orthopedic clinic for left shoulder pain. (R. at 611-14.) Her physical exam revealed a tenderness in her shoulder, "5/5" upper extremity strength, and a forward flexion range of motion limited to 110 degrees with a maximum range of 160 degrees with pain. (R. at 614.) Subacromial injections were suggested as treatment for her shoulder pain, and they were administered later that month. (R. at 611-12, 614.)

On August 23, 2011, Plaintiff visited Parkland's rheumatology clinic due to pain in her knees and hands. (R. at 592-98.) She met with Dr. Laura Tarter, M.D., who reported bilateral knee pain and swelling in Plaintiff's hands. (R. at 592.) Although a physical examination revealed "4/5" strength in Plaintiff's upper extremities with no tenderness, there was a limited range of motion with the abduction and internal rotation of her left shoulder. (R. at 593, 598.) X-rays of her hands revealed small erosion and minimal narrowing near the medial base of the middle finger of her right hand and no abnormalities in her left hand. (R. at 668-69, 737-38.)

On January 24, 2012, Plaintiff returned to Dr. Tarter for pain and swelling in her hands. (R. at 1383-86.) She exhibited "4/5" upper extremity strength with no inflammation or swelling in her

joints, but she again had a decreased range of motion in her left shoulder. (R. at 1401-02.) X-rays showed no abnormalities in either of Plaintiff's hands, and Dr. Tarter found no evidence of inflammatory arthritis during the exam. (R. at 1385.) Dr. Tarter "suspect[ed]" her pain came from mild osteoarthritis or a "component of chronic pain syndrome." (R. at 1385.)

On January 28, 2012, Plaintiff met with Dr. Harar Yusuf, M.D., for a consultative physical examination. (R. at 565-70.) She reported "9/10" pain in her left shoulder and "7/10" pain in her right knee. (R. at 565.) Dr. Yusuf reported that she was alert, oriented, able to walk without assistive devices, and had a normal station and gait. (R. at 566.) He further reported that she had "5/5" upper and lower extremity strength with no swelling. (R. at 567.) Plaintiff could make a fist bilaterally and could fully extend both hands and all fingers, however she did show a decreased range of motion in her left shoulder and had an inability to squat. (R. at 567-68.) Dr. Yusuf opined that Plaintiff should be able to sit, stand, push, pull, kneel, crawl, and crouch. (R. at 568.) He further opined that she could reach, grasp, handle, and finger objects. (R. at 568.) X-rays of her left shoulder showed mild degenerative joint disease with no evidence of dislocation, fracture, or soft tissue injury. (R. at 570.) Overall, there were no significant radiographic abnormalities. (R. at 570.)

On March 5, 2012, Dr. James Wright, M.D., a SAMC, completed a physical RFC assessment based upon the record. (R. at 572-78.) He opined that Plaintiff had the following exertional and postural limitations: able to occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds; able to stand, walk, or sit with normal breaks for a total of about 6 hours in an 8-hour workday; an unlimited ability to push and pull; occasionally able to balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and never able to climb ladders/ropes/scaffolds. (R. at 572-73.) She also had an unlimited ability to handle, finger, feel, and reach, but was only frequently able to reach

overhead with her left shoulder. (R. at 574.)

On March 7, 2012, Plaintiff returned to Parkland's orthopedic clinic for left shoulder pain. (R. at 1370-71.) She reported that the subacromial injections did not decrease her shoulder pain and requested additional therapy. (R. at 1370.) Her left shoulder had a range of motion of 90 degrees forward flexion, 90 degrees abduction, 45 degrees external rotation, and "great difficulty getting her hand behind her back." (R. at 1370.) She had "5/5" strength in her upper extremities and an intact sensation. (R. at 1371.) She was prescribed physical therapy to help with the pain. (R. at 1371.)

On April 25, 2012, Plaintiff began a physical therapy program at Parkland for her left shoulder. (R. at 1362-63.) She had a "moderate loss of range of motion" which caused an "impact in ability to reach overhead with dominant arm [and to] lift/carry with left arm." (R. at 1363.) Her goals were to improve the functional reach of her left shoulder and to improve her active range of motion in her arms. (R. at 1363.)

On June 19, 2012, Plaintiff was "self-discharged" from her physical therapy program at Parkland because she had missed several appointments and had "not followed up per recommendation." (R. at 1298-99.) She reported an increased range of motion in her left shoulder but had failed to achieve her goals fully. (R. at 1298.)

On August 28, 2012, Dr. Maureen A. Finnegan, M.D., of Parkland performed a subacromial decompression surgery with distal clavicle excision on Plaintiff's left shoulder. (R. at 1238-40, 1250-53, 1282-85.) The next day, Plaintiff continued to complain about pain in her left shoulder, but it was "well controlled" by her current pain medication. (R. at 1226.) She had a full range of motion in her wrist and a "5/5" wrist flexion and extension. (R. at 1226-27.) Two weeks after the surgery, Plaintiff returned for a follow-up appointment and continued to complain of pain in her left

shoulder. (R. at 1210-11.) She was provided a "pain sling for comfort" and enrolled in a different physical therapy program. (R. at 1210-11.)

On October 17, 2012, Plaintiff began physical therapy at Parkland for arm and shoulder pain. (R. at 1186-89.) She wore a sling but was "doing well with some pain." (R. at 1186.) Her elbows were "a little stiff," but x-rays showed no complications or abnormalities. (R. at 1187.)

On January 4, 2013, Plaintiff was discharged from her physical therapy program after meeting her goals of increasing the range of motion in her shoulders and being able to independently complete a home exercise program. (R. at 1754-55.) She reported that her left shoulder was "doing much better," and she experienced pain "only with end range elevation and internal rotation behind the back." (R. at 1754.) It was noted that she made "good progress" towards performing daily activities without limitations. (R. at 1754.) During a follow-up appointment on February 27, 2013, Plaintiff reported some pain in her left shoulder, but it had "greatly improved" after surgery because she no longer felt "constant pain." (R. at 1753.)

On April 12, 2013, Plaintiff was admitted to the Methodist Dallas Medical Center (Methodist) for back pain. (R. at 1760-68.) She was diagnosed with back pain-acute exacerbation and was prescribed pain medication. (R. at 1761-65.) She was instructed to return to Methodist or visit with her primary care physician if the pain became worse. (R. at 1761.)

**3. Hearing Testimony**

On April 17, 2013, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (R. at 147-81.) Plaintiff was represented by an attorney. (R. at 147.)

***a. Plaintiff's Testimony***

Plaintiff testified that she had pain in the joints of her arms, hands, and legs, but she had

never been diagnosed with rheumatoid arthritis. (R. at 162-63, 165-67.) She also had pain and swelling in her hands and could use them between 5 and 10 minutes before she had to rest them for 30 to 40 minutes. (R. at 169.) She took medication for her hand pain, but it made her drowsy during the day. (R. at 170-71.) She also experienced pain in her lower back that caused her problems bending and could sit for only an hour at a time. (R. at 171-72.) She had surgery on her left shoulder and completed a physical therapy program in 2012. (R. at 167-68.) She continued to do physical therapy exercises at home. (R. at 168.)

Plaintiff first testified that she could stand for only 5 minutes before having to sit down, but she later testified that she could stand between 2 and 3 hours in an 8-hour workday. (R. at 160, 162.) She could walk for "about a half a block or a block" before having to rest, and she had difficulty lifting a gallon of milk. (R. at 173-74.) She also had problems reaching overhead and above shoulder level. (R. at 171.) She testified that she "sometimes" forgot things. (R. at 172.)

***b. VE's Testimony***

The VE testified that he had reviewed the vocational information in Plaintiff's file and determined that she had the following past relevant work experience: home health attendant, DOT 354.377-014 (SVP: 3, medium) and cook helper, DOT 317.687-010 (SVP: 2, medium). (R. at 175.)

The ALJ asked the VE to consider a hypothetical individual who had the same age, education, and work history as Plaintiff and also had the following restrictions: able to lift and carry 20 pounds occasionally and 10 pounds frequently; able to stand or walk for 6 out of 8 hours; able to occasionally balance, stoop, crouch, kneel, and climb ramps or stairs; never able to crawl or climb ladders, ropes, or scaffolds; able to frequently reach, but not overhead; must avoid concentrated exposure to extreme cold; and able to perform only 1 to 2 step instructions. (R. at 176.) The VE

responded that the hypothetical individual would not be able to perform any of Plaintiff's past relevant work, but the individual could perform jobs at the light, unskilled occupational base which included the following: cafeteria attendant, DOT 311.677-010 (SVP: 2, light) with 100,000 jobs nationally and 6,000 in Texas; folding machine operator, DOT 208.685-014 (SVP: 2, light) with 56,000 jobs nationally and 2,900 in Texas; and marker, DOT 209.687-034 (SVP: 2, light) with 40,000 jobs nationally and 1,750 in Texas. (R. at 176-77.)

Plaintiff's attorney asked the VE to add to the hypothetical individual the limitation of being able to reach bilaterally only occasionally instead of frequently. (R. at 178.) The VE responded that "if the hypothetical individual was limited to only occasional reaching bilaterally, it would eliminate the light, unskilled base." (R. at 178.) Plaintiff's attorney then asked the VE to add the limitation of being able to use her hands for between 5 and 10 minutes before needing to rest them. (R. at 179-80.) The VE responded that this would also eliminate all "light work" classifications. (R. at 180.)

**C. <u>The ALJ's Findings</u>**

The ALJ issued her decision denying benefits on May 20, 2013. (R. at 132-46.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2009. (R. at 38.) At step two, the ALJ found that she had the following severe impairments: mild degenerative joint disease; degenerative joint disease of the shoulders; degenerative disc disease of the back; and osteoarthritis of the finger and foot. (R. at 138.) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (R. at 138.)

Next, the ALJ determined that Plaintiff retained the RFC to perform the following: lift and carry 20 pounds occasionally; lift and carry 10 pounds frequently; sit, stand, or walk for 6 hours out

of an 8-hour workday; occasionally stoop, crouch, kneel, balance, and climb ramps or stairs; never crawl or climb ladders, ropes, and scaffolds; frequently reach but must avoid overhead reaching; must avoid concentrated exposure to extreme cold; and able to perform jobs with 1-2 step instructions. (R. at 138-40.)

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (R. at 141.) At step five, the ALJ relied upon the VE's testimony to find her capable of performing work that existed in significant numbers in the national economy, including jobs such as cafeteria attendant, folding machine operator, and marker. (R. at 141-42.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from April 1, 2009, through the date of the decision.[7] (R. at 142.)

### D. New Evidence Submitted to the Appeals Council

Plaintiff timely appealed the ALJ's decision to the Appeals Council and submitted new evidence consisting of updated treatment records from Parkland and Methodist about her back, shoulder, and joint pain. (R. at 12-28, 35-116.) The Appeals Council considered the relevant evidence in conjunction with the ALJ's decision and found that the new information did not provide a basis for changing the decision. (R. at 1-5.)

## II. LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236

---

[7] Both parties note that the ALJ incorrectly referenced Plaintiff's original onset of disability date and not her amended onset date of February 1, 2011, to which she stipulated during the administrative hearing. (R. at 142, 152.) Neither party argues that this was reversible error. (*See* docs. 17, 19.)

(5th Cir. 1994); 42 U.S.C. § 405(g). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *Id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *Id.* at 436.

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status."

*Anthony*, 954 F.2d at 295. An "impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304

(5th Cir. 1987). After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Loveland v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## III. ISSUE FOR REVIEW

Plaintiff presents one issue for review:

> A. When the Social Security Administration receives evidence relevant to a disability claim, it must accept the evidence or explain why it will not be admitted into the record. The Administration must also "evaluate every medical opinion [it] receive[s]" regardless of source. Did the Administration err when it removed from the record a State agency medical opinion (which was previously admitted) that identified limitations that preclude the very jobs the ALJ found that Plaintiff could perform?

(doc. 17 at 5.)

### A. <u>SAMC Medical Opinions</u>

Plaintiff contends that the ALJ erred by removing from the record and failing to weigh Dr. Reddy's RFC assessment from September 21, 2009. (*Id*. at 17-22.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. §§ 404.1520b(b) and 404.1527(c). Every medical opinion is evaluated regardless of its source. *Id.* at § 416.927(c). SAMCs, such as Dr. Reddy, are considered experts in the Social Security disability program, and their opinions may be entitled to great weight if they are supported by the evidence. *See Rawls v. Astrue*, No. 4:10–CV–71–BJ, 2011 WL 725279 at *11 (N.D. Tex. Mar. 2, 2011). Although an ALJ is solely responsible for assessing a claimant's RFC, she must consider and evaluate any opinion by a SAMC regarding the claimant's RFC. *See* SSR 96–6p, 1996 WL 374180 (S.S.A. July 2, 1996). Specifically, "RFC assessments by

[SAMCs] . . . are to be considered and addressed in the [ALJ's] decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment[s]" and "are to be evaluated considering all the factors . . . for considering opinion evidence" outlined in 20 C.F.R. § 404.1527(c). *Id.* The ALJ is not required to expressly discuss each finding by a SAMC or discuss each factor listed in 20 C.F.R. § 404.1527(c), however, because such a detailed analysis applies only to the ALJ's rejection of a treating sources' uncontradicted opinion. *See Newton v. Apfel*, 209 F.3d 448, 456–58 (5th Cir. 2000). The ALJ also "must explain the weight given to these opinions in [his] decision." SSR 96–6p, 1996 WL 374180 at *4.

Here, Dr. Reddy's RFC assessment was properly admitted into the administrative record of Plaintiff's SSI application, but the ALJ removed it from the record after the administrative hearing without explanation and made no direct reference to it in her decision. (*See* R. at 132-46.) The Commissioner concedes that Dr. Reddy's RFC assessment was not included in the certified administrative record after being initially admitted, and she only argues that the omission of this medical evidence was not harmful enough to require reversal. (doc. 19 at 7-9.) Accordingly, the ALJ erred by removing from the record and failing to weigh Dr. Reddy's opinions in her decision. *See Golas v. Colvin*, No. 3:13-CV-4110-BN, 2014 WL 2587633 at *5 (N.D. Tex. June 10, 2014) (finding error when an ALJ did not consider or expressly assign weight to a SAMC's opinion that was admitted to the record).

**B. <u>Harmless Error</u>**

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988). "[E]rrors are considered

prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Accordingly, to establish prejudice that warrants remand, Plaintiff must show that consideration of Dr. Reddy's RFC assessment might have led to a different decision. *See id.* at 816 (citing *Newton*, 209 F.3d at 458).

Plaintiff argues that the omission prejudiced her because Dr. Reddy identified manipulative limitations that are inconsistent with the types of jobs that the ALJ determined she could perform at step five of the sequential analysis. (doc. 17 at 20-21.) Dr. Reddy opined in his RFC assessment that Plaintiff could only occasionally reach in all directions, including overhead, with both of her upper extremities (doc. 17-2 at 2-4), while Dr. Wright opined in a subsequent RFC assessment that Plaintiff had no limitations with her ability to reach in all directions except that she was limited to frequent overhead reaching with her left shoulder (R. at 572-74). The ALJ did not adopt either of these opinions in her decision, and instead found that Plaintiff was limited to frequent reaching in all directions "but must avoid overhead reaching." (R. at 138-40.)

The Commissioner first argues that the ALJ's error was harmless because Dr. Reddy's assessment was considered in a separate denial of Plaintiff's prior applications on January 31, 2011.[8] (doc. 19 at 7-8.) In her decision on the earlier applications, the ALJ identified, but did not explicitly weigh, Dr. Reddy's RFC assessment when she determined that Plaintiff had not been under a

[8] As previously noted, Plaintiff applied for supplemental security income and disability insurance benefits on August 3, 2009, but they were both denied on January 31, 2011, after an administrative hearing before the ALJ. (R. at 314-39, 340-58.)

disability from March 12, 2009, to January 31, 2011. (R. at 347-49.) The Commissioner contends that this prior denial of a separate claim, which Plaintiff never appealed, gave a "preclusive effect" that rendered Dr. Reddy's assessment "irrelevant" because it predated Plaintiff's current application. (doc. 19 at 7, 9.) Though the Commissioner is correct that an administrative determination that is not appealed must be given a preclusive effect to other disability claims, it only precludes claims alleging disability during or prior to the period of that final determination and does not also preclude every medical opinion made during that period as "irrelevant" to separate claims alleging disability during later periods. *See Anderson v. Sullivan*, 887 F.2d 630, 632 n.1 (5th Cir. 1989); *see also Davidson v. Colvin*, 164 F. Supp. 3d 926, 942 (N.D. Tex. 2015) (finding that "medical opinions may not be ignored just because they predate the disability onset date"). Plaintiff in her current SSI application alleged an onset date of disability of February 1, 2011, which is one day after the prior decision was issued on January 31, 2011. (R. at 152, 343-50.) Accordingly, Dr. Reddy's assessment is neither precluded by the earlier determination nor "irrelevant" to Plaintiff's current application, and it should have been considered by the ALJ. *See* 20 C.F.R. § 416.927(c) (explaining that the social security office "will evaluate every medical opinion [it] receives" regardless of source).

The Commissioner next contends that the ALJ's error was harmless because the medical record shows improvements in Plaintiff's manipulative abilities after her shoulder surgery in 2012, which "render Dr. Reddy's September 2009 limitations irrelevant. " (doc. 19 at 8.) After the surgery on her left shoulder, Plaintiff completed a physical therapy program where she reported an unspecified increase in the range of motion of her left shoulder and a decrease in pain which now occurred "only with end range elevation and internal rotation behind the back." (R. at 1754-55.) These records are the most recent medical evidence submitted to the ALJ regarding Plaintiff's

shoulder impairments and were dated less than three months before the date of the ALJ's decision and over two years after Plaintiff's alleged onset date of disability. (*See* R. at 152, 132-46, 1753-55.) There are no other medical records that corroborate these improvements, and all of the assessments and opinions of her manipulative limitations, including Dr. Wright's RFC assessment, occurred prior to the shoulder surgery. (R. at 571-78.) In the RFC analysis, the ALJ did review the post-surgery medical evidence and determined that "[Plaintiff's] function had improved such that the limitations on the left shoulder are likely no longer needed in 2013," but she also determined in the very next paragraph of the decision that the medical evidence of her right shoulder did not "suggest . . . a conclusion that [Plaintiff] would be unable to reach on at least an occasional basis." (R. at 140.)

The ALJ's distinction between Plaintiff's unlimited ability to reach with her left shoulder post-surgery and her more limited ability to "reach on at least an occasional basis" with her right shoulder is never addressed in the decision, and the RFC had the exact same manipulative limitations for both shoulders. (R. at 138-40.) This distinction is also not addressed in any of the other medical records, and there appears to be no consensus among the medical evidence as to the extent of Plaintiff's limitations in her shoulders. While some medical records show more significant limitations in her left shoulder's range of motion (R. at 593, 598, 614, 1370), some show only moderate limitations (R. at 567-68, 574, 670, 739, 1363, 1754), and others show no limitations at all in the range of motion of both shoulders (R. at 655-56, 905). Because of the inconsistencies in the evaluation of Plaintiff's shoulders in both the medical records and the ALJ's decision, it is not clear that the ALJ would have deemed Dr. Reddy's assessment as "irrelevant," and even if the ALJ might have afforded it no weight at all, it is not the duty of the reviewing court to "substitute its

judgment of the facts for the ALJ's, speculate on what the ALJ could have done or would do on remand, or accept a *post hoc* rationalization." *See Benton v. Astrue*, No. 3:12-CV-0874-D, 2012 WL 5451819 at *8 (N.D. Tex. Nov. 8, 2012).

Because the medical evidence on the limitations in Plaintiff's shoulders varies and is not fully consistent with the ALJ's findings, it is not inconceivable that the ALJ might have added more limitations to Plaintiff's ability to reach in the RFC if she had considered Dr. Reddy's assessment instead of removing it from the record completely. *See McAnear v. Colvin*, No. 3:13–CV–4985-BF, 2015 WL 1378728 at *5 (N.D. Tex. Mar. 26, 2015) (finding remand was required because there was a realistic possibility of a different conclusion by the ALJ where the court was unsure of whether the ALJ considered the medical source's opinion and whether such a review would have changed the outcome of the decision). This change to the RFC would also affect Plaintiff's disability determination, as explained by the VE in his testimony at the administrative hearing where he stated that "if the hypothetical individual [with the same RFC as Plaintiff] was limited to only occasional [and not frequent] reaching bilaterally, it would eliminate the light, unskilled base" of jobs. (R. at 178.) All of the jobs cited by the ALJ during step five of the sequential analysis require the ability for frequent reaching[9] and were in the "light, unskilled" job base, which means that there would be nothing in the record to satisfy the Commissioner's burden to show the existence of other gainful employment available in the national economy that Plaintiff is capable of performing. *See Greenspan*, 38 F.3d at 236.

Accordingly, the ALJ's error was not harmless because it is not inconceivable that she would

---

[9] The ALJ found that Plaintiff could perform the jobs of cafeteria attendant, folding machine operator, and marker. (R. at 141-42.) All of these positions are identified by the Department of Labor as requiring the ability to reach frequently. *See* U.S. DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES at 98, 134, 367 (1993).

have reached a different decision had she considered Dr. Reddy's assessment instead of removing it from the record. *See Singleton v. Astrue*, No. 3:11–CV–2332-BN, 2013 WL 460066 at *6 (N.D. Tex. Feb. 7, 2013) (finding the ALJ's failure to consider a medical source opinion was not harmless error because the court could not say what the ALJ would have done had he considered the opinion, and had he considered the opinion he might have reached a different decision).

## IV. CONCLUSION

The Commissioner's decision is **REVERSED,** and the case is **REMANDED** to the Commissioner for further administrative proceedings.

**SO ORDERED** this 30th day of March, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE